*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0212**

State of Minnesota,
Appellant,

vs.

Boon Wa Thao,
Respondent.

**Filed August 1, 2016
Affirmed
Jesson, Judge**

Washington County District Court
File No. 82-CR-14-1064

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Peter Orput, Washington County Attorney, Thomas Wedes, Assistant County Attorney, Stillwater, Minnesota (for appellant)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Frank Richard Gallo, Jr., Assistant Public Defenders, St. Paul, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Jesson, Judge.

## UNPUBLISHED OPINION

**JESSON**, Judge

The state appeals from the district court's decision imposing dispositional departures from the presumptive sentences for three felonies committed by respondent

Boon Wa Thao. Because the district court did not abuse its discretion by departing dispositionally based on its findings that respondent is particularly amenable to probation, we affirm.

**FACTS**

Boon Wa Thao, who is married in the Hmong culture, discovered that his wife was involved in a sexual relationship with her male coworker, V.X. She arranged to meet V.X. in the evening outside their workplace, but on arriving, V.X. entered her van and discovered that Thao was also in the van. Thao stated that he knew about the affair and demanded that V.X. reimburse him funds that he had paid for the privilege of marrying his wife. V.X. refused to pay and denied the affair.

Thao directed his wife to drive to a Wal-Mart, where they drove around slowly for about ten minutes, and V.X. attempted to escape. Thao told V.X. that if he tried that again, Thao would kill him. Thao then told his wife to drive toward Taylors Falls. On the way, V.X. stated that he needed to use the restroom, and Thao allowed him to exit the van in a dark, sparsely populated area. Thao, who was carrying a machete-style knife, also left the van. Thao held on to V.X.'s shirt with his left hand while carrying the knife in his right hand, V.X. tried to break free, and the men scuffled. Thao swung the knife and cut V.X. behind his left ear. V.X. ran toward the nearest house, discovered it was dark, and reversed course. As he passed, Thao raised the knife and inflicted a deep gash along V.X.'s jawline. V.X. reached a home to seek help, police were called, and V.X. was transported to the hospital, where he received treatment for his severe wound, which is likely to result in permanent nerve damage and scarring.

After an investigation, the state charged Thao by amended complaint with aiding and abetting attempted second-degree intentional murder, aiding and abetting first-degree assault, and kidnapping. Thao waived his right to a jury trial, and the district court found him guilty of all three counts after a three-day bench trial.

The defense moved for downward durational and dispositional departures. The district court did not depart durationally, imposing concurrent sentences of 86 months on the kidnapping charge, 86 months on the assault charge, and 75 months on the attempted-murder charge. But the district court issued a downward dispositional departure, finding mitigating factors of Thao's amenability to probation and his remorse and acceptance of responsibility. The district court noted that, based on a survey administered during a presentence investigation, Thao had a very low likelihood of reoffending. The district court therefore stayed execution of all three sentences, placed Thao on probation for up to 40 years, and ordered him to serve 365 days in jail.

After a previous appeal and remand,[1] the district court sentenced Thao on the murder conviction to 130.5 months, the lower end of the presumptive sentence, with execution stayed for 20 years, and conditions including 365 days in jail, with credit for time served. The district court found that a downward dispositional departure was warranted based on

---

[1] The state filed a sentencing appeal, and this court reversed and remanded for resentencing, noting that, based on the correct offense level for aiding and abetting attempted second-degree intentional murder, the correct presumptive guidelines sentence for that offense was 153 months, not 75 months, and that the district court did not discuss a downward durational departure. *State v. Thao*, No. A15-0037 (Minn. App. Aug. 12, 2015) (order opinion). We expressed no opinion on whether a dispositional or durational departure was appropriate.

Thao's particular amenability to probation. Specifically, the district court found that he: (1) scored a nine on the Level of Service Inventory Report, which was in the top 5-10% of the scores that the judge had seen; (2) had no other antisocial or abusive behavior, but had held down a responsible job on a long-term basis, served as his mother's primary caretaker for a four-year period during her last illness, and served as an active caretaker for his biological children and his stepchildren; (3) completed an anger-management program in jail before being ordered to do so and took a leadership position within the group; (4) took advantage of strong community and cultural support systems; (5) had been compliant during his previous ten months on probation prior to resentencing; (6) had accepted responsibility for his crime and expressed remorse; and (7) had his judgment affected by cultural norms and traditions relating to marriage and fidelity at the time of the offense. The state appeals the sentencing decision.

## D E C I S I O N

This court reviews the district court's sentencing decision for an abuse of discretion. *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014). "[A]s long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination," an appellate court "may not interfere with the sentencing court's exercise of discretion." *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011) (quotation omitted).

But the district court's discretion is limited by the Minnesota Sentencing Guidelines, and the district court may depart from the presumptive sentence provided in the guidelines only when substantial and compelling circumstances are present. *Soto*, 855 N.W.2d at 308

4

(citing Minn. Sent. Guidelines 2.D.1). A mitigated, or downward, dispositional departure occurs when the sentencing guidelines recommend a prison sentence, but the district court stays the sentence. Minn. Sent. Guidelines 1.B.4.a.(2) (Supp. 2013). Substantial and compelling circumstances to justify a downward dispositional departure may be shown if a defendant is "particularly amenable to probation." *Soto*, 855 N.W.2d at 308 (emphasis omitted).

On resentencing, the district court issued a downward dispositional departure from the presumptive sentences for Thao's offenses, ordering probation rather than imprisonment. The state argues that the record does not contain evidence that Thao is particularly amenable to probation, so that the district court abused its discretion by ordering a downward departure.[2]

Typically, a defendant's amenability to probation is demonstrated by factors such as "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). While not determinative, diagnostic assessments and presentence investigations are

---

[2] Thao notes in his brief that the district court may have erred by convicting him of both aiding and abetting attempted second-degree murder and aiding and abetting first-degree assault based on a single course of conduct. *See* Minn. Stat. § 609.035, subd. 1 (2012) (stating that if a person's conduct constitutes more than one offense, that person may be punished for only one offense). But Thao has not filed a notice of related appeal to challenge the district court's imposition of concurrent sentences, and this matter is not properly before this court. *See* Minn. R. Civ. App. P. 106 (requiring respondent to file notice of related appeal); Minn. R. Crim. P. 28.04, subd. 3 (requiring a defendant seeking review of an adverse ruling in the state's appeal to file a cross-appeal); *State v. Bren*, 704 N.W.2d 170, 176-77 (Minn. App. 2005) (declining to address an issue raised by respondent on appeal because respondent did not file a notice of review), *review denied* (Minn. Dec. 13, 2005).

5

permissible for the district court to examine as factors in a decision to depart dispositionally. *Soto*, 855 N.W.2d at 309. And whether public safety would be served by placing the offender on probation is relevant to whether the district court abused its discretion in deciding to stay a presumptively executed sentence. *Id*. at 313.

Here, the district court made extensive findings in determining that Thao is particularly amenable to probation. First, the district court found that Thao attained a score of nine on the Level of Service Inventory Report, which placed him in a category of monitored supervision, and which the judge said was "probably in the top 5 percent" of all the scores that she had seen in 19 years on the bench.[3] The district court also found that the presentence investigation and other available background information showed that Thao has no previous antisocial or abusive behavior. This information was properly considered by the district court in making its sentencing decision, and it tended to show that placing Thao on probation would not constitute a risk to public safety. *See Soto*, 855 N.W.2d at 313. The district court also emphasized to Thao that it was placing him on probation for up to 20 years and that any probation violation may result in the execution of his full 130.5-month sentence.

Second, in imposing a dispositional departure, the district court made thorough findings on a number of the *Trog* factors. At Thao's initial sentencing, the district court

---

[3] The Level of Service Inventory Report is an actuarial tool designed to assess risks and needs relating to criminal behavior and demonstrates an ability to predict reconviction and parole violation. Glenn D. Walters, *Predicting Recidivism with the Psychological Inventory of Criminal Thinking Styles and Level of Service Inventory-Revised: Screening Version*, 35 Law & Hum. Behav. 211, 213 (2011).

noted that he had "led an exemplary life" before the offense and had "been on very good behavior" while in jail awaiting sentencing. At resentencing, the district court found that he had family support and a caretaking role for his children. The district court also found that, while in jail, he had completed an anger-management program before being ordered to do so, assuming a leadership position in that program. And the district court found that he had accepted responsibility for his offense and repeatedly expressed remorse for his actions. "The presence or absence of remorse can be a very significant factor in determining whether a defendant is particularly amenable to probation." *State v. Sejnoha*, 512 N.W.2d 597, 600 (Minn. App. 1994), *review denied* (Minn. Apr. 21, 1994).

Not all factors cited by the district court were proper to address in deciding whether to impose a downward dispositional departure. For example, the district court inappropriately cited Thao's ability to obtain and keep employment. *See* Minn. Sent. Guidelines 2.D.2.c.(2) & cmt. 2.D.201 (Supp. 2013) (stating that "[e]mployment factors" should not be used as reasons for departing from the presumptive sentence because they are "manipulable" factors). Nor was the district court's consideration of cultural norms and traditions relating to marriage and fidelity, which the district court found affected Thao's judgment at the time of the offense, supported by the record or the law. At resentencing, the district court noted that the judgment Thao "was exercising at the time this offense was committed . . . was certainly affected by cultural norms and traditions relating to marriage and fidelity." But the only references to cultural norms in the record are conclusory phrases such as "[i]nformation related to Hmong marriage customs is very relevant to this case," and "it is still taboo in Hmong culture for two individuals from the

7

same clan, with the same last name, to marry or date." There is nothing in the sentencing transcript or in the district court's findings that explains why infidelity in the context of Hmong culture is more egregious than in other cultures. There is nothing that specifically links "cultural norms" to Thao's particular amenability to probation. Finally, even if there was clear evidence of a cultural norm, it constitutes a "[s]ocial factor[]," which should not be considered as a reason for departure from the presumptive sentence. *See* Minn. Sent. Guidelines 2.D.2.d (Supp. 2013) (excluding consideration of social factors as reasons for departure).[4]

But while the district court mentioned improper factors, it also expressly relied upon appropriate reasons for a departure: a Level of Service Inventory Report score that supported monitored supervision, Thao's family and community support, his caretaking role for his children, and his remorse. Unlike *Soto*, where there was an "absence in the record of any 'substantial and compelling' circumstances that distinguish Soto from other defendants," *Soto*, 855 N.W.2d at 313, the district court here pointed to specific factors that distinguish Thao from other defendants, and those factors provided substantial and compelling circumstances to support its imposition of a downward dispositional departure. We conclude that, despite its mention of improper factors, the district court's sentencing

---

[4] We recognize that the list provided in the sentencing guidelines is a non-exclusive list of reasons for departure. But we also note that the commission rejects factors "that are general in nature, and that could apply to large numbers of cases, such as intoxication at the time of the offense." Minn. Sent. Guidelines cmt. 2.D.301 (Supp. 2013). Even if "cultural norms" were not excluded as "[s]ocial factors," which should not be used as reasons for departure, the category is inappropriate given its general nature. *See id*.

8

decision reflected its adequate consideration of permissible grounds for departure. *Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985).

We do not discount the serious injury that Thao caused to V.X., which the district court mentioned at sentencing. As V.X. wrote to the district court, "I will always have the feeling someone is going to kidnap me . . . or tries [sic] to kill me again. The scars he left on my face [will remain] with me for the rest of my life." But in reviewing a district court's sentencing decision, it is not our role to ascertain whether we would have reached the same result. Rather, we are charged with determining whether the state has shown that the district court abused its discretion in sentencing. *Soto*, 855 N.W.2d at 307-08. On this record, we cannot conclude that the district court abused its wide discretion in granting a dispositional departure and staying the execution of Thao's sentence.

**Affirmed.**